NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**UNILOC 2017 LLC,**
*Plaintiff-Appellant*

**v.**

**VERIZON COMMUNICATIONS, INC., CELLCO PARTNERSHIP INC., DBA VERIZON WIRELESS, VERIZON BUSINESS NETWORK SERVICES INC., VERIZON DIGITAL MEDIA SERVICES, INC.,**
*Defendants-Appellees*

---

2020-1802

---

Appeal from the United States District Court for the Eastern District of Texas in No. 2:18-cv-00536-JRG, Chief Judge J. Rodney Gilstrap.

---

Decided: March 10, 2021

---

MARC BELLOLI, Feinberg Day Kramer Alberti Lim Tonkovich & Belloli LLP, Burlingame, CA, argued for plaintiff-appellant. Also represented by DAVID ALBERTI, ELIZABETH DAY.

MEGAN S. WOODWORTH, Venable LLP, Washington,

2          UNILOC 2017 LLC v. VERIZON COMMUNICATIONS, INC.

DC, argued for defendants-appellees.  Also represented by
FRANK C. CIMINO, JR., JONATHAN L. FALKLER.

————————————

Before PROST, *Chief Judge*, PLAGER and O'MALLEY, *Circuit
Judges*.

PROST, *Chief Judge*.

This case is about claim construction.  In 2018, Uniloc
2017 LLC ("Uniloc") sued defendants-appellees (collectively, "Verizon") for patent infringement but stipulated to
noninfringement after an unfavorable claim construction.
As discussed below, we agree with that claim construction
and affirm the judgment.

I

Uniloc owns U.S. Patent No. 6,895,118 ("the '118 patent"), which concerns video coding:

1. A method of coding a digital image comprising
macroblocks in a binary data stream, the method
comprising:

an estimation step, for macroblocks, of a capacity
to be reconstructed via an error concealment
method,

a decision step for macroblocks to be excluded from
the coding, a decision to exclude a macroblock from
coding being made on the basis of the capacity of
such macroblock to be reconstructed,

characterized in that it also includes a step of inserting a resynchronization marker into the binary
data stream after the exclusion of one or more macroblocks.

The point of the claimed method is that certain portions of
digital video images—so-called macroblocks—can be omitted during video coding because their content can be

effectively reconstructed after the fact from other information. Taking advantage of methods originally meant for error concealment, the invention uses a "resynchronization marker" to signal the deliberate exclusion of a macroblock and to trigger eventual image reconstruction. This lets a video stream use less data.

Only one claim term is at issue here: "resynchronization marker," which the district court construed as a "sequence of bits in a data stream that can serve as a resynchronization point and an error-concealment reconstruction point of excluded macroblock(s) *for all modes of coding*." *Uniloc 2017 LLC v. Verizon Commc'ns*, No. 2:18-cv-00536-JRG, 2020 WL 805271, at *5–9 (E.D. Tex. Feb. 18, 2020) ("*Decision*") (emphasis added). "Modes of coding" here refers to I-, P-, and B-coded images, terminology indicating the extent to which rendering of an image in a video depends on the content of the images before or after it. Uniloc disagrees with the inclusion of "for all modes of coding," preferring instead "not including a flag useful only for regions having a motion vector close to zero and for which the texture has not significantly changed."

After claim construction, Uniloc stipulated to noninfringement. The court entered judgment and Uniloc appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

## II

We review the district court's claim construction de novo if no subsidiary factfinding is involved. *See Network-1 Techs., Inc. v. Hewlett-Packard Co.*, 981 F.3d 1015, 1022 (Fed. Cir. 2020). Claim terms "are generally given their ordinary and customary meaning," which is "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Phillips v. AWH Corp.*, 415 F.3d 1310, 1312–13 (Fed. Cir. 2005) (en banc). Under this standard, both the claims and the specification provide substantial guidance. *Id.* at 1314–15.

### III

Both parties emphasize as critical one passage in the specification that describes the capabilities of "the invention" and differentiates it from the prior art. *See* '118 patent col. 4 ll. 47–65. The passage notes that a prior-art coding technique (the so-called "uncoded flag") can disadvantageously "only be used for P coded images." *Id.* at col. 4. ll. 47–58. In contrast, for "the invention," exclusion of macroblocks is possible "for all modes of I, P[,] or B coding." *Id.* at col. 4 ll. 61–65. Relying on this passage, the district court concluded that the claimed "resynchronization marker" must be "able to serve as an excluded-macroblock-construction trigger in I, P, and B coding." *Decision*, 2020 WL 805271, at *8.

We view the district court's reading as the one most consistent with the specification and the claim text. A patent's description of "the invention" can limit claim scope—especially where that description of the invention's broad capability is juxtaposed with a description of the shortcomings of the prior art. *E.g.*, *TiVo, Inc. v. EchoStar Commc'ns Corp.*, 516 F.3d 1290, 1300 (Fed. Cir. 2008); *SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1341–44 (Fed. Cir. 2001). We agree that the claimed method must be capable of macroblock exclusion for all modes of coding, which means that the claimed resynchronization marker must also work for all modes.

Uniloc disagrees. Its point seems to be that any given embodiment of the invention could instead employ a panoply of specialized one-mode resynchronization markers—one for the P mode, another for I, the next for B, and so on.[1]

---

[1]    Uniloc argues that, in contrast, a marker that works for *all* modes would be a "specific flag" and that the specification disclaims the use of "any specific flag." Verizon responds that Uniloc's own proposed specialized one-

But if a given marker didn't work for all modes, then neither would the invention. After all, embodiments that Uniloc contends would fall within the claim scope (featuring only one such marker and working for less than all modes)[2] would both embrace the disparaged disadvantage of the prior art and spurn the touted capability of the invention.

Accordingly, we conclude that the district court's construction is correct.

## IV

We have considered Uniloc's other arguments and find them unpersuasive. For the reasons above, we agree with the district court's claim construction and affirm the judgment.

**AFFIRMED**

---

mode markers would *also* be "specific flags" under this logic. We agree with Verizon; Uniloc's "specific flag" arguments do not help resolve the meaning of the claim as to all-modes capability.

[2] *See, e.g.*, Oral Arg. at 2:48–4:57, No. 20-1802, http://oralarguments.cafc.uscourts.gov/default.aspx?fl=20-1802_02052021.mp3.